UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN M. KEYS, et al.,

    Plaintiffs,

v.                                    Case No. 09-11105

ARKEMA INC.,

    Defendant.
                                                     /

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Defendant's "Motion for Summary Judgment." Plaintiffs have filed a response in opposition to the motion, and Defendant filed a reply. The court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons below, the court will grant Defendant's Motion.

**I. BACKGROUND[1]**

In this age discrimination case, Plaintiffs' case theory is that their employer decided to sell the factory where they worked because the workforce was aged. Plaintiffs allege that this violates Michigan's Elliot Larsen Civil Rights Act ("ELCRA").

Defendant was the owner of the Riverview Plant, where Plaintiffs worked. (Pls.' Resp. Br. Ex. 4 at 13.) The Riverview Plant produced "specialty amines," which are chemicals used in various industrial applications, such as water treatment, and also used in the production of detergents, lubricants, and gas-treatment agents. (Def.'s Mot. Br. Ex. D ¶ 3.) The production of specialty amines was, however, never central to

---

[1] Unless otherwise noted, the following facts are undisputed.

Defendant's core business. (Pls.' Resp. Br. Ex. 4 at 13.) At some point, the president of Taminco, a company that specialized in the production of such amines, approached Defendant and indicated an interest in buying the Riverview Plant. (Pls.' Resp. Br. Ex. 4 at 13 & Ex. 6 at 24-25.) Emanuel Katz was an Arkema employee involved in the deliberations concerning whether to sell the Riverview Plant to Taminco. (Pls.' Resp. Br. Ex. 6 at 10-11.) According to Katz, Defendant decided to sell the Riverview Plant and its specialty amine production business to Taminco because "the net present value of keeping the business was substantially less than the net present value being offered to [Defendant] by Taminco." (Pls.' Resp. Br. Ex. at 13-14, 33.) According to another of Defendant's employees, the Riverview Plant's sale was also motivated by a desire to divest Defendant of "non-core" business activities. (Pls.' Resp. Br. Ex. 3 at 40.)

The parties dispute the extent to which the Riverview Plant's labor costs were considered in Defendant's decision to sell. Defendant collected and provided to Taminco "due diligence" information. The due diligence was collected to give Taminco proof of the Riverview Plant's value, and it included some information on labor costs, such as employee age, years of service, and how these variables factor into an employee's benefits. (Pls.' Resp. Br. Ex. 2 at 2 & Ex. 3 at 17.) According to Defendant, the information was not compiled until after the decision to sell the Riverview Plant to Taminco. (Def.'s Reply 1.) To support this proposition, Defendant cites the deposition of Samuel Glover, an Arkema employee who collected the due diligence information. Glover stated that the due diligence was for the purpose of "evaluating if what [Taminco was] getting is what they *agreed* to." (Pls.' Resp. Br. Ex. 3 at 13-14 (emphasis added).) Defendant also maintains that when it decided to sell the Riverview Plant, it considered

only total fixed costs rather than examining the individual categories of costs, such as labor costs. (Pls.' Resp. Br. Ex. 6 at 15.)

Regardless of the timing and consideration of the due diligence, Plaintiffs point out that, a year and a half before the sale, Defendant modified its pension plan after conducting "age related analyses." (Pls.' Resp. Br. Ex. 4 at 21-23.) As a result, Plaintiffs assert that Defendant was "keenly aware of the progressing age of its workforce." (Pls.' Resp. Br. 3.) Defendants do not appear to contest this point—indeed, it seems evident to the court that any competent business entity would need to be constantly aware of the seniority and age of its employees, as these metrics are likely to be closely related to overall labor costs .

When Defendant sold the Riverview Plant to Taminco, nearly all employees were transferred to Taminco. (Pls. Resp. Br. Ex. 6 at 29.)

Plaintiffs state in their response that Taminco has slated the Riverview Plant for closure at the end of 2009. (Pls.' Resp. 2.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a

defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

The ELCRA prohibits an employer from discriminating against an employee on the basis of age.  Mich. Comp. Laws § 37.2202(1)(a).  In some cases of discrimination, a plaintiff can prove discrimination based on direct evidence.  In such cases, the plaintiff can go forward and prove discrimination just as a plaintiff would prove any other matter in a civil case.  *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001).

Plaintiffs do not assert that this is a direct-proof case, but, instead, they rely on indirect evidence of discrimination.  (Pls.' Resp. 5.)

For ELCRA cases with no direct proof of discrimination, the Michigan Supreme Court has adopted the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Hazle*, 628 N.W.2d at 521.  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination on the "basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination."  *Id.*  In other words, the plaintiff must "present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  *Id.*  In a typical discrimination case where a plaintiff is passed over for a promotion or denied employment, proving the prima facie case is done by establishing four factors: (1) the plaintiff belongs to a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for the position; and (4) the job was given to another under circumstances giving rise to an inference of unlawful discrimination.  *Id.*  This case, however, involves the sale of an

entire plant, so the four-element prima facie case defined above is not terribly helpful. But "the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand." *Id.* at 521 n.6. In *Allen v. Diebold, Inc.*, 33 F.3d 674, 678 (6th Cir. 1994), the Sixth Circuit defined the prima facie case in an Age Discrimination in Employment Act[2] ("ADEA") case involving a plant-closing. The *Allen* court analogized plant-closing cases with reduction-in-workforce cases, *see, e.g.*, *Deetjen v. Anchor Coupling, Inc.*, 101 F. App'x 46, 48 (6th Cir. 2004), and held that, to establish a prima facie case, the "plaintiffs in a plant closing case must show that an employer's decisions regarding which factories to close or downsize were based on consideration of the ages of the workers at those factories." *Allen*, 33 F.3d at 678. Specifically, the *Allen* court held that the prima facie case could be established with "statistics . . . which are so unusual that, absent explanation by defendant, we could permit a jury to infer age discrimination on that basis alone." *Id.* There is no reason why the prima facie case in a plant-closing case should be different from a plant-sale case, so the court will utilize the standard articulated in *Allen*.

Where the plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises. *Hazle*, 628 N.W.2d at 521. At this point the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment

---

[2] "For analytical purposes, Michigan's Elliott-Larsen Act resembles federal law, and the same evidentiary burdens prevail as in ADEA cases. *Gallaway v. Chrysler Corp.*, [306 N.W.2d 368, 370-71 (Mich. 1981)] (adopting Sixth Circuit analysis in *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975))." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir. 1987).

decision. *Id.* Accordingly, if the defendant produces such evidence then the plaintiff's "prima facie case drops away."

If the defendant articulates a legitimate reason, then, to survive summary judgment, the plaintiff must produce evidence allowing the conclusion that the defendant's explanation is pretextual. *Id.* In this final step of the *McDonnell Douglas* analysis,

> [t]here are three ways a plaintiff can establish that a defendant's stated legitimate, nondiscriminatory reasons are pretextual: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

*Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. Ct. App. 1990).

Plaintiffs suggest that the prima facie case is established "by several factors." Plaintiffs argue that the material in the due diligence produced for Taminco establishes that Defendant considered workforce age and labor costs when deciding to sell the Riverview Plant. Specifically, Plaintiffs point to charts included in the due diligence that included detailed breakdowns of years of service and age with references to how those variables specifically affect employee benefits. Plaintiffs point to nothing on the record, however, suggesting that Defendants considered the due diligence materials *before* deciding to sell the Riverview Plant.

Even assuming that Defendant considered the due diligence before deciding to sell, Plaintiffs have still failed to establish a prima facie case. As Plaintiffs admit, "the ELCRA 'does not constrain an employer who acts on the basis of other factors—pension status, seniority, wage rates, etc., that empirically correlated with age.'" (Pls.' Resp. 8-9.) The due diligence materials, at best, allow only the inference

7

that Defendant based the decision to sell on labor costs, which empirically correlate with age. Plaintiffs make this point for Defendant—in their response Plaintiffs argue that Defendant based the decision to sell on how "ages [are] associated with various employment benefits, i.e., defined benefits, and how such benefits will be eliminated upon the sale of the facility to Taminco." (Pls.' Resp. 5.) Accordingly, though Plaintiffs may have produced evidence suggesting that Defendant considered labor costs that are correlated with and controlled by age, as a matter of law this evidence is insufficient to allow an inference that Defendant sold the plant because the workforce was old rather than expensive.

Plaintiffs argue that because 70% of the Riverview Plant workforce was over the age of fifty, an inference of age discrimination is proper. The statistics offered by Plaintiffs do not support the argument of age discrimination. Plaintiffs make no argument and point to no evidence suggesting that the Riverview Plant age distribution is older than that of Defendant's other facilities. Moreover, Plaintiffs make no argument and present no evidence that the Riverview Plant workforce was "old" *vis a vis* Michigan's or the country's general population. Indeed, Plaintiffs point to nothing suggesting that the Riverview Plant age distribution is disproportionately older than any other distribution. Without more, these statistics are probative of nothing and fall far short of allowing an inference of age discrimination.

Plaintiffs also argue that the "lack of credibility of the Defendant has to be considered by this [c]ourt in determining whether age was a significant factor in the decision to sale [sic] the facility." (Pls.' Resp. 7.) It does not. The burden to establish a prima facie case of discrimination is Plaintiffs'. Plaintiffs have not met their burden of

establishing a prima facie case, and they cannot shift their burden to Defendant by attacking the credibility of Defendant and Defendant's employees.

Furthermore, even assuming that Plaintiffs could establish a prima facie case, Defendant has articulated a legitimate business reason for selling the plant: divesting itself of non-core businesses and a determination that the Riverview Plant was worth more on the auction block than in Defendant's portfolio.  Given that the Riverview Plant will be closed, Defendant's reasoning seems more than legitimate—it appears shrewd. Defendant has produced ample facts establishing its proffered reason as the actual basis for the decision to sell, while Plaintiffs have produced nothing suggesting that these reasons were not the actual basis for or sufficient justification for the decision to sell.  Accordingly, Plaintiffs have failed to present evidence sufficient to rebut Defendant's legitimate explanation for selling the Riverview Plant.

Plaintiffs' assertions reduce to a claim that Defendant sold their plant because its labor was expensive—expensive because it was staffed by an aged and high-seniority workforce.  This claim fails because legislatures have calculated that our laws should not discourage companies from acting based on workforce cost, a factor that is largely controlled by workforce age.  Rightly or wrongly, the marketplace rather than courts govern business relationships with these characteristics.

## IV.  CONCLUSION

Because Plaintiffs have failed to establish a prima facie case of discrimination, the court will grant Defendant's "Motion for Summary Judgment."  Accordingly,

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 20] is GRANTED.

        S/Robert H. Cleland             
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 24, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 24, 2009, by electronic and/or ordinary mail.

        S/Lisa G. Wagner             
Case Manager and Deputy Clerk
(313) 234-5522